Alaina C. Hawley. (SBN 309191)
ahawley@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, Indiana 46214
Tel: (317) 637-1777
Fax: (317) 687-2414

Attorney for Defendant
EVANS DELIVERY COMPANY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS H. GARCIA; RAMIRO OROZCO; and MICHEL SALMO, each individually and on behalf of all others similarly situated, all current, former and future aggrieved employees, and the general public of California, and WILVER ANTONIO VASQUEZ QUINTANILLA and EDGAR VELIZ BAEZA, each individually and on behalf of all others similarly situated and the general public of California,<br><br>Plaintiffs,<br><br>vs.<br><br>EVANS DELIVERY COMPANY, INC., a corporation; ALLEN CEPEDA; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:19-cv-4316<br><br>**DEFENDANT EVANS DELIVERY COMPANY, INC.'S NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that Defendant, Evans Delivery Company, Inc. ("Evans"), hereby removes this case from the Superior Court of Los Angeles County, California, to the U.S. District Court for the Central District of California. In support of this removal, Defendant states the following:

**1.     The Action**. Plaintiffs, Santos H. Garcia, Ramiro Orozco, and Michel Salmo, filed their Complaint, captioned *Santos H. Garcia, Ramiro Orozco, and Michel Salmo, each individually and on behalf of all others similarly situated, all current,*

*former and future aggrieved employees, and the general public of California v. Evans Delivery Company, Inc., a corporation; Allen Cepeda; and DOES 1 through 100, inclusive*, Case No. 18STCV04250, in the Superior Court of Los Angeles County, California, on November 8, 2018. On April 15, 2019, Plaintiffs filed a First Amended Complaint ("Complaint") to add two additional named Plaintiffs, Wilver Antonio Vasquez Quintanilla and Edgar Veliz Baeza. The Complaint alleges Evans violated California law by: (1) failing to separately pay piece rate employees for rest periods and other nonproductive time in violation of California Labor Code §§ 226.2 and 1194; (2) failing to reimburse for necessary business expenses in violation of California Labor Code § 2802; (3) failing to provide required meal and rest periods in violation of California Labor Code §§ 226.7 and 512; (4) taking unlawful deductions in violation of California Labor Code § 221; (5) failing to pay all earned wages upon separation in violation of California Labor Code § 203; (6) failing to provide accurate wage statements in violation of California Labor Code §§ 226 and 226.2; and (7) engaging in unfair competition in violation of the Business and Professions Code § 17200, *et. seq.* ("UCL"). Plaintiffs Garcia, Orozco, and Salmo further seek civil penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). Copies of all pleadings and papers filed in the Superior Court of Los Angeles County, California of which Evans is aware are attached as *Exhibit A*.

    **2.** **<u>Statutory Grounds for Removal.</u>** This action is removable under 28 U.S.C. § 1441(a), which provides for the removal of state court civil actions over which U.S. District Courts have original jurisdiction. As set forth below, this Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the matter is a putative class action in which at least one putative plaintiff class member is a citizen of a different state than Evans and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

    **3.** **<u>Citizenship of the Parties.</u>** Evans believes Plaintiffs are domiciled in California and are citizens of California. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*,

741 F.3d 1082, 1087 (9th Cir. 2014) (holding that a party may plead allegations of diversity on the basis of information and belief) (citing 5 Charles Alan Wright *et al.*, Federal Practice and Procedure: Federal Rules of Civil Procedure § 1224 (3d ed., updated 2013) (noting that permitting allegations to be pled on information and belief "is a practical necessity")). Evans is a Pennsylvania corporation with its principal place of business in Pennsylvania. Evans is therefore a citizen of Pennsylvania. 28 U.S.C. 1332(c); *see also Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Thus, at least one putative class member is a citizen of a different state than at least one defendant, and the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**4.   Class Action / Aggregate Number of Proposed Class.** A class action under CAFA is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). This case is a class action under CAFA because Plaintiffs seek class certification under California Code of Civil Procedure § 382, which authorizes representative actions. *See Compl.*, ¶¶ 2-4, 17, 18.

Plaintiffs define their proposed class to include "Each individual who performed any services as a truck driver for Evans Delivery in California at any time since 4 years prior to commencement of this action." *Compl.*, ¶ 17. Evans' records reflect that at least 173 independent contractor owner-operators and drivers hired by those owner-operators (the "Putative Class Members") were based out of and performed services in California under Evans' U.S. DOT motor carrier operating authority and pursuant to Equipment and Hauling Agreements between Evans and the owner operators. The aggregate number of the proposed class therefore exceeds the requirement of 28 U.S.C. § 1332(d)(5)(B).

**5.   Amount in Controversy.** Although Evans denies all of Plaintiffs' allegations, the amount in controversy by virtue of the claims asserted by Plaintiffs in the Complaint exceeds the $5,000,000 jurisdictional threshold. *Dart Cherokee Basin*

*Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) ("a defendant's notice of removal [requires] only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold" and evidence establishing the amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegation).

### a. Meal Break Claims

Plaintiffs allege that at all relevant times, they and the putative class members "worked more than five hours and/or 10 hours" during their workday and Evans "did not provide them with uninterrupted, off-duty 30 minute meal periods before they began their sixth and/or eleventh hour of work." *Compl.*, ¶ 35. Plaintiffs further allege they were required to keep their trucks within sight at all times when under dispatch because they were responsible for the trailer and cargo. *Id.*, ¶ 36. Under California Labor Code § 226.7, Plaintiffs seek one additional hour of pay at their regular rate of compensation for each work period during each day in which Defendants failed to provide them with a timely statutory off-duty meal break. *Id.*, ¶ 41. The statute of limitations for recovery of meal payment premium pay under Section 226.7 is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007). Here, however, Plaintiffs seek to recover the meal break premium under their UCL claim, which carries a four-year statute of limitations. *Compl.*, ¶ 72; Cal. Bus. & Prof. Code § 17208. Therefore, the Complaint puts in controversy premium payments for missed meal breaks that occurred between November 8, 2014, and the present.

Based on Evans' records of the number of settlement payments it issued related to work performed by the 173 Putative Class Members identified above between November 8, 2014, and December 31, 2018, the Putative Class Members worked an aggregate of approximately 6,342 weeks.

The total net revenue paid for the work of the 173 drivers across the same time period was approximately $9,281,000. Based on a conservative assumption that the putative class members worked six days per week every week between the start and

end dates of the contracts governing their services, these drivers worked an estimated 38,052 days (6,342 weeks x 6 days per week).[1] This means average daily net revenue for a driver is approximately $243.90 ($9,281,000/38,052). Based on a conservative assumption that drivers worked 10 hours per day,[2] a driver's average hourly rate was approximately $24.39 ($243.90/10).

Under a conservative assumption of two missed meal breaks for each week worked, at least **$309,362.76** in alleged penalties for missed meal breaks is therefore at stake in the case (6,342 weeks x 2 missed breaks per week x $24.39 average hourly rate).

### b. Rest Break Claims

Plaintiffs allege they and the Putative Class Members "worked more than four hours during their workday" and were not provided with ten minutes of uninterrupted, off-duty rest period time for each four hours worked. *Compl*., ¶ 44. Under California Labor Code § 226.7, Plaintiffs seek one additional hour of pay at their regular rate of compensation for each day Evans failed to provide them with timely or paid rest periods. *Id*., ¶ 48. As with their meal break claims, Plaintiffs seek to recover the rest break payments under their UCL claim, which carries a four-year statute of limitations.

---

[1] This is a conservative assumption because it *over*estimates the average days worked per week for the named Plaintiffs and thus reduces the estimated amount in controversy for the claim. A review of the approximately 8 months' worth of logs in Evans' possession for three of the five named Plaintiffs (Salmo, Baeza, and Quintanilla) reveals that each of them worked an average of less than five days per week.

[2] The average hourly rate estimate is a conservative estimate because it likewise overestimates the amount of time worked by drivers, thereby increasing the denominator of the formula, which results in a lower estimated hourly rate and lower damages. A review of the logs in Evans' possession Plaintiffs Salmo, Baeza, and Quintanilla reveals that, across the period of time in 2018 for which Evans has log information, Salmo averaged only 7.45 hours of work on days he worked; Baeza averaged 9.25 hours per work on days he worked; and Quintanilla averaged 9.03 hours per work on days he worked.

*Compl.*, ¶ 72; Cal. Bus. & Prof. Code § 17208. Therefore, the Complaint puts in controversy payments for missed rest breaks that occurred between November 8, 2014, and the present.

Under a conservative estimate of two missed rest breaks for each week worked, at least **$309,362.76** in alleged penalties for missed rest breaks is therefore at stake in the case (6,342 weeks x 2 missed breaks per week x $24.39 average hourly rate).

### c. Late Wage Payment Claims

Plaintiffs allege Evans failed to pay or did not make timely payment of all wages owed to Plaintiffs and the putative class members because Evans took unlawful deductions, failed to separately compensate them for rest and nonproductive time, and failed to provide meal and rest breaks. *Compl.*, ¶ 61. Plaintiffs seek penalties under California Labor Code § 203, which allows recovery of waiting time penalties for 30 days at the individual's daily rate of pay. *Id*. The limitations period for the alleged late wage payment claims in this case is from November 8, 2015 (three years before the original complaint was filed) to the present. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).

Evans records reveal that since November 8, 2015, 120 of the 173 Putative Class Members ceased providing services under contracts with Evans. Assuming an average daily rate of $243.90 (as computed above), the total penalties sought by Plaintiffs on behalf of themselves and the 120 former putative class drivers who may timely assert a late wage claim is at least **$878,040** (average daily rate of $243.90 x 30 days x 120 Putative Class Members who provided services on or after the November 8, 2015).

### d. Wage Statement Claims

Plaintiffs allege Evans willfully, knowingly, and intentionally failed to provide class members with accurate wage statements in violation of California Labor Code § 226. *Compl.*, ¶ 65. Plaintiffs seek penalties for the alleged violations under Labor Code § 226. *Compl.*, ¶ 69. The statute of limitations on Plaintiffs' wage statement

claim is one year. *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1169-70 (E.D. Cal. 2012); Cal. Code Civ. Proc. § 340(a).

Labor Code § 226(e) entitles each employee to $50 for the first pay period in which a wage statement violation occurs and $100 per employee for each violation in a subsequent pay period, with the aggregate not to exceed $4,000 per employee. Evans' records indicate that, of the 173 Putative Class Members, 64 were owner-operators who received settlement statements from Evans and provided services during the one-year limitation period applicable to this claim. Of those 64 owner-operators, at least 14 received 40 or more settlement statements within the limitations period.[3] Those 14 putative class members will presumably seek the maximum $4,000 penalty, for a total of $56,000 (14 × $4,000). The remaining 50 putative class member owner-operators who provided services during the one-year limitations period for fewer than 40 weeks will presumably seek the maximum penalties based on the number of weeks worked, which translates to $50 for the first pay period worked and $100 for each subsequent pay period worked. Evans' records indicate that the 50 putative class members in question received 747 settlements between November 8, 2017, and December 31, 2018. Plaintiffs accordingly seek $50 for each of these 50 owner-operators for alleged deficiencies in the first settlement statements for a total of $2,500 ($50 x 50 initial pay periods) and $100 for each subsequent allegedly deficient wage statement for a total of $72,200 ($100 x 697 subsequent pay periods). The total penalties Plaintiffs seek under Labor Code § 226(e) is therefore at least **$128,200** ($56,000 + $72,200).

      **e.**    **Minimum Wage Claims**

Plaintiffs allege Evans compensated them on a piece-rate basis and failed to pay them and the Putative Class Members separate compensation for rest periods and other

---

[3] More than 14 owner-operators may have received 40 or more settlement statements if 2019 settlements were included in the computation. For purposes of this conservative removal calculation, however, Evans has only taken into consideration settlements received between November 8, 2017 and December 31, 2018.

nonproductive time. *Compl.*, ¶¶ 19-28. Specifically, Plaintiffs allege they and the proposed class performed non-driving work, such as conducting vehicle inspections, waiting to be dispatched, waiting between loads, waiting to pick up a load, loading and unloading time, travel time from the final delivery or drop-off location, truck washes, and fueling, and that Evans did not separately compensate them for this time in violation of California law. *Id.*, ¶ 26. Plaintiffs assert they and the putative class members are entitled to the payment of the minimum wage for this time, plus liquidated damages in an amount equal to the unpaid minimum wage, prejudgment interest, and attorney fees and costs. *Id.*, ¶¶ 22, 27. The applicable statute of limitations is three years, Cal. Civ. Proc. Code § 338, but is extended to four years here as a result of Plaintiff's allegations in his Tenth Cause of Action under the UCL. Cal. Bus. & Prof. Code § 17208.

As but one example of Plaintiffs' alleged uncompensated work, federal law requires truck drivers to conduct pre- and post-trip inspections of the vehicles they operate every day they drive. 49 C.F.R. §§ 392.7, 396.11, 396.13. A driver who has five loads on five different days during a week is therefore required to perform a minimum of five pre-trip and five post-trip inspections that week. *Id*. During the inspections, drivers are required to check numerous items on the truck and trailer. *Id*.

As described above, the Putative Class Members worked approximately 6,342 weeks between November 8, 2014, and December 31, 2018. If each Putative Class Members spent just *one hour* on inspections each *week* he or she worked, the amount placed in controversy by Plaintiffs' minimum wage claim based only on pre- and post-trip inspections (and not taking into account the other nonproductive activities Plaintiffs allege, such as waiting to load and unload, waiting for dispatch, truck washes, and fueling) is at least $66,591 ($10.50 / hour (average minimum wage during class period) x 1 hour x 6,342 weeks) in unpaid minimum wage. If Plaintiffs succeed on this claim, they would also be entitled to liquidated damages equal to the amount of

recovery. Under this conservative approach, the total amount in controversy is therefore at least **$133,182** ($66,591 x 2 (liquidated damages)).

### f.    Unlawful Deductions/Unreimbursed Expenses

Plaintiffs claim Evans "made deductions from PLAINTIFFS [sic] and each of the Class member's remuneration which were unlawful under Labor Code sections 221 and 224, which include the deductions listed on the 'SETTLEMENT DETAILS' they were provided with their remuneration[.]" *Compl.*, ¶ 51. Plaintiffs also assert they and the Putative Class Members were not reimbursed for business expenses "including, but not limited to, mileage, fuel and other costs associated with the trucks they used in the discharge of their duties[.]" *Id.*, ¶ 30. They seek to recover all unpaid wages owed, plus interest and attorneys' fees. *Id.*, ¶¶ 33, 55. A review of Evans' settlement statement records shows that, at a minimum, $5,949,203.76 was deducted from the gross settlement amounts Evans paid for services performed by Putative Class Members between November 8, 2014, and December 31, 2018.[4] The amount in controversy related to Plaintiffs' Cal. Lab. Code §§ 2802 and 221 claims is therefore at least **$5,949,203.76**.

### g.    Total Amount in Controversy

The amount in controversy, just by virtue of the claims discussed above, is therefore at least **$7,707,349.76** ($309,362 + $309,362 + $878,040 + $128,200 + $133,182 + $5,949,203.76), well in excess of the $5,000,000 required for removal. Moreover, this amount takes a conservative view of the number of Putative Class Members as well as the days and hours worked during the class period. And it does not include the other claims Plaintiffs assert against Evans that could not be precisely

---

[4] The $5,949,203.76 deducted from gross settlement payments to owner-operators consists of deductions for administrative charges, Comdata fuel and oil charges, driver logs, escrow payments, fine and toll violation payments, fuel and road taxes, insurance, lease/buy maintenance, lease2buy administrative fees, maintenance escrow payments, payment deductions, plate and permit payments, tire program payments, and tractor lease or rental payments.

quantified at this early stage of litigation, such as claims based on failure to separately pay compensation for many tasks and penalties under PAGA. Nor does it include attorney fees, which Plaintiffs seek, and which are included in the amount in controversy. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793-94 (9th Cir. 2018). In class action cases in California, prevailing plaintiffs have requested, and courts have awarded, attorney fees in the range of 25% to 33% of the overall recovery. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491, 492 (E.D. Cal. 2010) (citing to five recent wage and hour cases where federal court judges approved fee awards that ranged from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. Nov. 14, 2007) (approving award of 33% of common fund). Thus, Plaintiffs are expected to seek at least **$1,926,837.44** in attorney fees alone, or 25% of the $7,707,349.76 amount in controversy discussed above, bringing the amount in controversy to a total of at least **$9,634,187.20**.

6. **Timeliness of Removal.** Under 28 U.S.C. § 1446, a Notice of Removal must be filed within 30 days of receiving a copy of the complaint if the pleading is removable on its face. If the complaint is not removable on its face, the case must be removed within 30 days of receiving an amended pleading, motion, order, or other paper from which removability may first be ascertained.

The 30-day removal period has never been triggered here because the Complaint is not removable on its face, and Plaintiff never served Evans with a post-complaint pleading or other paper that affirmatively and unambiguously specified a damage amount sufficient to satisfy the federal jurisdictional minimum. Rather, removability could only be determined by reviewing and investigating information outside the four-corners of the Complaint. *See Kuxhausen v. BMW Fin. Servs.*, 707 F.3d 1136, 1139-1140 (9th Cir. 2013) (clock begins running only when the basis for removal is "revealed affirmatively in the initial pleading") (internal quotation marks omitted);

*Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 790-91 (9th Cir. 2018). Because the time to remove has not yet begun to run, Evans' removal is timely.

**7. Notice of Removal to Adverse Parties and to State Court Clerk.** Under 28 U.S.C. § 1446(d), Evans will give written notice of this removal to Plaintiffs and to the Clerk of the Superior Court of Los Angeles County, California. Specifically, promptly after filing this Notice of Removal, Evans will send to Plaintiffs and will file with the Clerk of the Superior Court of Los Angeles County, California, a Notice of Removal to Adverse Parties and State Court Clerk, a true and correct copy of which is attached as *Exhibit B*.

**8. No Waiver.** By filing this Notice of Removal, Evans does not waive any available defenses.

WHEREFORE, Defendant respectfully removes this case to this Court.

Dated: May 17, 2019

Respectfully submitted,

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

By: /s/ Alaina Hawley
Alaina C. Hawley
Attorney for Defendant,
EVANS DELIVERY COMPANY, INC.

# PROOF OF SERVICE

**STATE OF INDIANA, COUNTY OF MARION**

I, **Sherry Parker,** am employed in the County of Marion, State of Indiana. I am over the age of 18 and not a party to the within action. My business address is 10 West Market Street, Suite 1400, Indianapolis, IN 46204.

On May 17, 2019, I served the foregoing document described as **NOTICE OF REMOVAL** on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> Stephen Glick, Esq.
> M. Anthony Jenkins, Esq.
> LAW OFFICES OF STEPHEN GLICK
> 1055 Wilshire Boulevard, Suite 1480
> Los Angeles, California 90017

√ **(BY MAIL)** I deposited such envelope in the mail at Indianapolis, Indiana. The envelope was mailed with postage thereon fully prepaid.

√ I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

√ **(STATE)** I declare under penalty of perjury under the laws of the State of Indiana that the above is true and correct.

√ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 17, 2019, at Indianapolis, California.

*/s/ Sherry Parker*

_____
Sherry Parker

4835-5671-7449, v. 11